******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# KIMBERLY KENNESON *v.* CELIA EGGERT ET AL.
## (AC 38784)

Keller, Beach and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney, E, and the defendant insurance company, N Co., claiming that E had committed fraud against the plaintiff and that N Co. was vicariously liable for E's actions. The plaintiff previously had brought an action for, inter alia, negligence against A, who was insured by N Co., and another individual, R. A was represented by E on behalf of N Co. in the negligence action and after a trial, a jury awarded the plaintiff damages against both A and R. Pursuant to a settlement agreement in that action, the plaintiff had signed a general release and withdrawal form in exchange for settling the case against A for $67,000. After the plaintiff discovered that she was unable to recover damages from R, she subsequently claimed in a motion to open the judgment in the negligence action that E had engaged in unfair and deceptive behavior by instructing her to sign the release without explaining what it was and how it could affect the judgment in that action. Specifically, the plaintiff alleged that E had misrepresented to her that she would not get any of the damages awarded to her under the settlement unless she signed the general release and withdrawal. After the trial court in the negligence action denied her motion to open and concluded that there was no evidence that E had coerced the plaintiff into signing the release, the plaintiff commenced the action against E and N Co. alleging fraud. In connection with discovery requests made by the plaintiff, the defendants provided a large number of documents but withheld several e-mails between them, claiming that the e-mails were protected by the attorney-client privilege and the work product doctrine. The trial court denied the plaintiff's motions for an order for compliance, concluding that the documents were protected and that the plaintiff had offered no proof to support a claim of fraud that would permit the attorney-clcient privilege to be pierced. Thereafter, the court granted the defendants' motion for summary judgment and rendered judgment thereon, concluding that the plaintiff was collaterally estopped from asserting her fraud action because the issue had been addressed in the plaintiff's previous negligence action, and the plaintiff appealed to this court. *Held*:

1. The trial court improperly granted the defendants' motion for summary judgment as to the plaintiff's claim for intentional misrepresentation and determined that the claim was precluded by collateral estoppel, as genuine issues of material fact existed as to whether the claim for intentional misrepresentation set forth in the complaint underlying the appeal in the present case was fully and fairly litigated and actually decided at the hearing on the motion to open the negligence action; it was unclear from the record what facts were necessarily determined in the prior action with respect to the precise wording of E's alleged misrepresentation, as although the court in that action found that there was no evidence that the plaintiff had executed the release as a result of coercion, which is different from the issue of intentional misrepresentation, the court did not specifically address whether the plaintiff failed to prove the elements of a claim for fraudulent misrepresentation, and in order for collateral estoppel to bar relitigation, the issue sought to be relitigated must be identical to the one decided in the prior proceeding.

2. The defendants could not prevail on their claim, raised as an alternative ground for affirming the summary judgment, that because the alleged misrepresentation did not relate to a past or existing fact, it was not actionable and, thus, summary judgment was nonetheless proper: there having been no determination by a court of precisely what, if anything, E told the plaintiff at the settlement conference, it was possible that E's alleged misrepresentation could have been construed by the plaintiff as relating to an existing fact by suggesting that the current state of the law was such that the plaintiff could not receive the amount of the judgment unless she signed the release, and, therefore, a genuine issue

of material fact existed that precluded summary judgment; moreover, although the defendants claimed that, given certain inconsistencies in the plaintiff's allegations, her claim against them should be disposed of pursuant to the sham affidavit rule, pursuant to which practice a trial court may disregard an offsetting affidavit in opposition to a motion for summary judgment that contradicts an affiant's prior deposition testimony, any inconsistencies in the plaintiff's allegations bore on her credibility and did not destroy the probative value of the evidence, and even if this court were to accept the very narrow sham affidavit rule, which has yet to be expressly recognized by Connecticut appellate courts, the rule would not have been triggered under the circumstances of this case.

3. The trial court properly determined that no genuine issue of material fact existed as to whether the plaintiff could establish a claim for fraudulent nondisclosure; to establish that E's silence regarding the potential effects of the release and withdrawal constituted fraudulent conduct, the plaintiff had to prove that the parties' relationship imposed a duty on E to explain the potential effects of those documents to the plaintiff, and the trial court found that no such relationship existed in the present case because E was providing legal representation to the plaintiff's adversary, A, and not to the plaintiff, who presented no evidence to counter that fact.

4. The trial court did not abuse its discretion in denying the plaintiff's motions for compliance; contrary to the plaintiff's claim, that court properly determined that certain documents sought by the plaintiff were protected by the attorney-client privilege and the work product doctrine, which were not time limited to the previous tort case as alleged by the plaintiff.

Argued March 9—officially released September 12, 2017

*Procedural History*

Action to recover damages for fraud, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Roraback, J.*, denied the plaintiff's motions for an order for compliance; thereafter, the court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Kimberly Kenneson*, self-represented, the appellant (plaintiff).

*Robert D. Laurie*, with whom, on the brief, was *Heather L. McCoy*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiff, Kimberly Kenneson, appeals from the trial court's summary judgment rendered in favor of the defendants, Celia Eggert and Nationwide Mutual Fire Insurance Company (Nationwide). On appeal, the plaintiff contends that the court improperly held that (1) the defendants were entitled to summary judgment, and (2) certain communications were not discoverable. We reverse in part the trial court's summary judgment and affirm the court's denial of the plaintiff's motions for an order for compliance with the court's discovery order.

The record reveals the following relevant facts and procedural history. In January, 2007, the plaintiff commenced a civil action against Carl Rosati and Michael Altman for negligence, battery, and recklessness (negligence action).[1] Altman was insured by Nationwide, and Nationwide agreed to provide Altman with a defense. Nationwide arranged for the Law Offices of John Calabrese to represent Altman. Eggert, an attorney with that firm, represented Altman at trial. The plaintiff represented herself at trial and obtained a jury verdict in her favor. The jury awarded the plaintiff damages of $67,556.07 against Altman and $380,037.38 against Rosati. Although he was served with process, Rosati did not appear at trial. After the verdict was accepted by the court, Altman filed a motion to set aside the verdict and a motion for collateral source reduction.

Several weeks later, on July 18, 2011, the plaintiff, Eggert, and a Nationwide claims adjuster appeared in court for a hearing on the motions and a settlement conference. At the settlement conference, Nationwide offered the plaintiff $57,000 to settle the case against Altman, which the plaintiff declined. Nationwide then offered the plaintiff $67,000, which the plaintiff ultimately accepted.

Pursuant to the settlement agreement, the plaintiff signed a general release and a withdrawal form. The release provided, in relevant part, that "[b]y signing this release, [the plaintiff] expressly acknowledges that he/she has read this document with care and that he/she is aware that by signing this document he/she is giving up all rights and claims and causes of action, and any and all rights and claims that he/she may now have or which may arise in the future . . . against [Nationwide and Altman] . . . . Knowing this . . . he/she signs this document voluntarily and freely without duress." The release also stated that "[the plaintiff] further acknowledges that no representation of fact or opinion has been made to him/her by [Nationwide and Altman] . . . which in any manner has induced [the plaintiff] to agree to this settlement." The plaintiff signed the release before two witnesses and a notary public.

The plaintiff subsequently discovered that she was

unable to collect damages from Rosati, who had been uninsured and had died without assets in August, 2013. On April 28, 2014, the plaintiff filed a motion to open the judgment and a motion to reinstate Altman as a defendant. The plaintiff argued that she did not know that signing the release would prevent her from reallocating the damages, at least in part, against Rosati to Altman and Nationwide, and that Eggert engaged in "unfair and deceptive" behavior when she instructed her to sign the release "without explaining what it was and how it can affect a judgment."

Altman filed an objection, arguing that the release was valid and that the plaintiff was aware of the nature of the document when she signed it. On June 20, 2014, the court, *Pellegrino, J.*, heard oral argument on the plaintiff's motion to open. During oral argument, Judge Pellegrino questioned the plaintiff regarding the alleged fraud committed by Eggert. Judge Pellegrino ultimately denied the plaintiff's motion, noting that there was no evidence that Eggert had coerced the plaintiff into signing the release, and that the release, by its terms, provided that the plaintiff had read the document with care. The plaintiff did not appeal from Judge Pellegrino's decision.

On July 17, 2014, the plaintiff commenced the present action against the defendants, alleging that Eggert had committed fraud against the plaintiff and that Nationwide was vicariously liable for her actions. The plaintiff subsequently made several discovery requests to the defendants, and the defendants objected. After a hearing, the court ordered the defendants to produce responsive documents and to provide a privilege log for any documents they redacted or withheld. The defendants subsequently provided a large number of documents, but withheld several e-mails between them, claiming that those communications were protected by attorney-client privilege and the work product doctrine. The plaintiff filed motions for compliance against both defendants. The court heard oral argument and denied the plaintiff's motions. The court held that the plaintiff was not entitled to materials protected by the attorney client privilege or the work product doctrine, and that the plaintiff had offered "[n]o quantum of proof . . . to support a claim of civil fraud which would permit the privilege to be pierced."

On December 4, 2014, the defendants filed a motion for summary judgment, arguing that the plaintiff's claim was barred by the doctrine of collateral estoppel, because Judge Pellegrino's decision on the plaintiff's motion to open in the negligence action had previously addressed the fraud issue. They also argued that the claim was barred by the terms and conditions of the release. The plaintiff filed a memorandum of law in opposition to the motion to which the defendants replied, and the parties appeared for argument on

August 8, 2015. The court held that the plaintiff was collaterally estopped from asserting her fraud claims and that, even if collateral estoppel did not apply, the defendants were entitled to summary judgment because the plaintiff was unable to prove her claims for common-law fraud. The plaintiff appeals from the court's summary judgment and its denial of her motions for compliance. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court improperly granted the defendants' motion for summary judgment. We agree with the plaintiff that a genuine issue of material fact exists as to her claim for intentional misrepresentation, but disagree with her claim that the court erred in granting the motion for summary judgment on her claim for fraudulent nondisclosure.

As a preliminary matter, we state the standard of review applicable to the resolution of the plaintiff's appeal. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.

"It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Brown* v. *Otake*, 164 Conn. App. 686, 699–701, 138 A.3d 951 (2016).

In her amended complaint, the plaintiff effectively presented two claims for fraud. First, she alleged that Eggert "falsely represented to the plaintiff . . . that she would not get any of her $67,556.07 award against

. . . Altman unless she signed a document . . . to settle the judgment . . . ." Second, she alleged that "Eggert, with the intent to deceive the plaintiff, knowingly failed to disclose and/or concealed that [the release and withdrawal] would result in the loss of the plaintiff's right to reallocate damages . . . ." We address each of the plaintiff's claims in turn.

A

The plaintiff first sets forth a claim for fraud based on intentional misrepresentation. "The essential elements of an action in common law fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . In contrast to a negligent representation, [a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (Citation omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

The court determined that the defendants were entitled to summary judgment because the plaintiff's claim (1) was precluded by collateral estoppel, (2) was based on a misrepresentation that did not relate to an existing or past fact, and therefore was not actionable, and (3) constituted a sham claim pursuant to the sham affidavit rule. The defendants argue that all three of the court's determinations were proper. We disagree.

1

The plaintiff argues that the court erred in concluding that her intentional misrepresentation claim was precluded by collateral estoppel. She reasons that Judge Pellegrino "did not, at the June 20, 2014 hearing, consider the issues raised in the complaint, namely, the fraudulent statements made by . . . Eggert to the plaintiff that the plaintiff was required to sign a release and withdraw her case against . . . Altman in order to obtain the damages awarded by the jury." We agree.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991). "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to

relitigate those facts in the second proceeding." (Internal quotation marks omitted.) Id., 297. "In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped *must be identical* to the issue decided in the prior proceeding." (Emphasis added.) Id.

First, it is not clear to us that the claim for intentional misrepresentation set forth in the complaint underlying this appeal was "actually litigated" at the hearing before Judge Pellegrino on the plaintiff's motion to open in the negligence action. In her motion to open, the plaintiff claimed that "[Eggert] stated I had to sign the [release] in order to receive the check she was going to give me *for damages won* from her client" and that "[i]t was explained that I would have to sign the documents if I was to collect *what was owed to me* by . . . Altman." (Emphasis added.) Following the plaintiff's jury verdict in the negligence action, the plaintiff was awarded $67,556.07 in damages against Altman. The plaintiff ultimately released Altman in return for $67,000. In presenting her claim at the hearing on the motion to open, the plaintiff occasionally referred to the damages awarded by the jury as "$67,000."

A careful review of the transcript of that hearing reveals that there may have been a lack of clarity as to whether the plaintiff claimed that Eggert had told her that she could not receive the *damages* award unless she signed the release, or that Eggert had told her that she would not receive the amount in *settlement* of the case unless she signed the release. For example, when the plaintiff argued that she never would have signed the release had she known that it would prevent her from reallocating damages, the court stated: "And you would have never gotten the 60—$67,000." The plaintiff responded: "I was awarded that, Your Honor." The court responded: "All right." Later, the court stated to the plaintiff: "I mean, what—that's not fraudulent, that's just a statement of fact. My client will not permit me to give you $67,000 of my money, unless the plaintiff signs a release as to me." The plaintiff responded: "Well, my argument there, Your Honor, is I didn't need to sign a release, $67,000 was . . . awarded to me . . . I didn't need to. It was a satisfaction . . . of judgment . . . ."

Because of these apparent miscommunications, it is difficult for us to discern "what facts were necessarily determined" in the prior action with respect to the precise wording[2] of Eggert's alleged misrepresentation. As a result, there exists a genuine issue of material fact as to whether the claim set forth in the complaint underlying this appeal—that Eggert represented to the plaintiff that "she would not get any of her $67,556.07 award against . . . Altman unless she signed a document for $67,000 to settle the judgment"—was fully and

fairly litigated at the hearing on the motion to open.

Furthermore, it is not clear to us that the issue of intentional misrepresentation was "actually decided" by the court in rendering its decision on the motion to open. Although the court concluded that "[t]here was no evidence presented that [the plaintiff] was in any way coerced to execute the release," it did not specifically address whether the plaintiff had failed to prove the elements of a claim for fraudulent misrepresentation. As noted previously, in order for collateral estoppel to bar the relitigation of an issue, "the issue concerning which relitigation is sought to be estopped must be *identical* to the issue decided in the prior proceeding." (Emphasis added.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 297. The issue of intentional misrepresentation is different from the issue of coercion. As such, a genuine issue of material fact remains as to whether the issue of intentional misrepresentation was "actually decided" by the court in rendering its decision on the plaintiff's motion to open.

Because a genuine issue of material fact exists as to whether the plaintiff's claim for intentional misrepresentation was "fully and fairly litigated" and "actually decided" in the context of her motion to open, the trial court improperly rendered summary judgment on the basis of collateral estoppel.[3]

2

The defendants argue, as an alternative ground for affirming the judgment, that the trial court properly determined that, even if the plaintiff's claim for intentional misrepresentation was not barred by collateral estoppel, the defendants nonetheless were entitled to summary judgment because the alleged misrepresentation did not relate to a past or existing fact and, therefore, was not actionable. We disagree.

"A representation of fact is a positive assertion that the fact is true. It implies that the maker has definite knowledge or information which justifies the positive assertion." 3 Restatement (Second), Torts, § 538A, comment (a), p. 83 (1977). "[T]he general rule is that a misrepresentation must relate to an existing or past fact" to be actionable. *Brown* v. *Otake*, supra, 164 Conn. App. 706. Our Supreme Court "ha[s] not yet addressed whether statements of judgment or statements conditioned on future events can support a claim for misrepresentation, although many other jurisdictions have adopted a position against such claims." *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 75 n.32, 873 A.2d 929 (2005). In determining whether a statement constitutes a statement of fact, as opposed to, for example, a statement of judgment or opinion, "[t]he question is . . . not alone one of the language used but of the sense in which it is reasonably understood." 3 Restatement (Second), supra, § 538A, comment (d), p. 84.[4]

As set forth in the plaintiff's complaint, Eggert alleg- edly misrepresented to the plaintiff that "she would not get any of her $67,556.07 award against . . . Altman unless she signed a document for $67,000 to settle the judgment on the verdict for negligence against [Altman] and also with[drew] the case against him." The defen- dants argue that this statement did not relate to an existing or past fact and, therefore, is not actionable. We are not persuaded.

Because no court has determined precisely what, if anything, Eggert said to the plaintiff at the settlement conference, is it difficult to determine how Eggert's alleged misrepresentation may reasonably have been understood by the plaintiff. It is entirely possible that the alleged misrepresentation could be construed as relating to an existing fact. For example, Eggert's alleged statement possibly may have suggested that the current state of the law was such that the plaintiff was not able to receive the amount of the judgment unless she signed the release.[5] In addition, because the plaintiff was self-represented, she may have presumed Eggert, an attorney, to have special knowledge of facts unknown to her in the context of a legal proceeding. See Restatement (Second), supra, § 539, comment (b), p. 86 ("The statement of opinion . . . may also reason- ably be understood to imply that [the maker] does know facts sufficient to justify him in forming the opinion . . . . This is true particularly when the maker is under- stood to have special knowledge of facts unknown to the recipient."); see also *Crowther* v. *Guidone*, 183 Conn. 464, 468, 441 A.2d 11 (1981) ("Considered in context, Guidone's statement that the plaintiffs could build a house on the subject property and then divide the parcel, selling the balance of the property to others, clearly was made as a statement of fact. . . . Guidone was an experienced real estate salesman who had extensive knowledge of the zoning regulations of North Branford. Thus, when he made the misrepresentation, he did not merely venture an opinion or an interpreta- tion of the law. He indicated that he knew, as a fact, that a certain use was permissible under the applicable zoning regulations.")

Because we must view the evidence in the light most favorable to the plaintiff; see *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 46, 881 A.2d 194 (2005); and because we cannot disregard the interpreta- tion that the alleged misrepresentation reasonably could have been understood to relate to an existing set of affairs, there was a genuine issue of fact such that we decline to affirm a grant of summary judgment on this ground.

3

The defendants also argue that they were entitled to summary judgment because, based on the "glaring

inconsistencies in what the plaintiff alleged that [Eggert] said at the hearing before Judge Pellegrino, and what the plaintiff averred in her affidavit opposing summary judgment," it was clear that the plaintiff was presenting a sham claim. We disagree.

"The 'sham affidavit' rule refers to the trial court practice of disregarding an offsetting affidavit in opposition to a motion for summary judgment that contradicts the affiant's prior deposition testimony." *Ross* v. *Dugan*, Superior Court, judicial district of New London, Docket No. CV-106006404-S, (December 16, 2011). "It must be strongly emphasized that the sham affidavit rule is a narrowly circumscribed doctrine that is to be applied with care. . . . [M]any courts have determined that if the witness provides a reasonable explanation for the contradiction, such as confusion or discovery of new evidence, the sham affidavit rule should not apply." (Citations omitted.) Id. Connecticut appellate courts have yet to expressly adopt this rule. Id.

The defendants claim that "[d]uring the hearing, the plaintiff said, 'when I asked Attorney Eggert what [the document was] her words to me were, you have to sign this document to get this check . . . .' In contrast, the plaintiff's affidavit opposing the [defendants'] summary judgment motion avers as follows: 'the defendant Eggert then falsely represented to me, pro se, that I would not get any of my $67,556.07 award against . . . Altman unless I signed a document . . . to settle the judgment . . . .'" The defendants argue that because of this inconsistency, the plaintiff's claim should be disposed of pursuant to the sham affidavit rule. Although we agree that the two statements may not have been entirely consistent, the shades of meaning were somewhat abstract, especially to a layperson. Any inconsistency may of course bear on the question of credibility, but it does not destroy all probative value. Even if we were to accept the very narrow "sham affidavit rule," which, again, has yet to be expressly recognized by Connecticut appellate courts, we do not find that the rule would be triggered in the circumstances of this case.

B

The plaintiff also has presented a claim for fraudulent nondisclosure. Specifically, she alleged in her complaint that Eggert "knowingly failed to disclose and/or concealed that [the release and withdrawal] would result in the loss of the plaintiff's right to reallocate damages . . . ." The plaintiff argues that, in granting the motion for summary judgment, the court improperly determined that she could not prove a claim for fraudulent nondisclosure because she failed to establish that she shared a fiduciary relationship with the defendants. We disagree.

It is well settled that "[m]ere nondisclosure . . .

does not ordinarily amount to fraud. . . . To constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak." (Citations omitted.) *Egan* v. *Hudson Nut Products, Inc.*, 142 Conn. 344, 348, 114 A.2d 213 (1955). Therefore, in order to prove that Eggert's silence regarding the potential effects of the release and withdrawal constituted fraudulent conduct, the plaintiff needed to prove that the parties' relationship imposed a duty on Eggert to explain the potential effects of those documents to the plaintiff. As the trial court noted, "[n]o such relationship existed in the present case because . . . Eggert was providing legal representation to the plaintiff's adversary [and not to her]." The plaintiff presented no evidence to counter this fact. Thus, the trial court properly determined that no genuine issue of material fact exists as to whether the plaintiff could establish a claim for fraudulent nondisclosure.[6]

## II

Finally, the plaintiff claims that the court improperly determined that certain documents were protected by the attorney-client privilege and the work product doctrine. We disagree.

As mentioned, the plaintiff served the defendants with requests for discovery in October, 2014. The defendants objected, and the court, after hearing oral argument, ordered the defendants to provide the plaintiff with certain documents and to provide a privilege log for any documents they withheld or redacted. The defendants subsequently disclosed a substantial amount of materials—approximately 550 pages of documents—as well as a privilege log identifying materials that had been withheld or redacted. The defendants withheld several e-mails between Eggert and a representative of Nationwide, e-mails between Eggert's office and a representative of Nationwide, and correspondence between Eggert and Altman, claiming that these materials were protected by the attorney-client privilege and/or the work product doctrine. The defendants also withheld documents containing confidential information regarding reserves. The plaintiff then filed motions for compliance against both defendants, and they responded in a joint memorandum in opposition to the motions.

After a hearing, the court entered an order denying the plaintiff's motions. The order provided, in its entirety, as follows: "The plaintiff is not entitled to information which is protected by the attorney-client privilege or which represents an attorney's opinion work product. No quantum of proof has been offered to support a claim of civil fraud which would permit the privilege to be pierced. Reserve information is not reasonably calculated to lead to the discovery of admissible evidence and is thus not subject to disclosure."

We begin by setting forth the relevant standard of review. "[T]he granting or denial of a discovery request rests in the sound discretion of the court. . . . Provided the trial court properly interpreted the pertinent statutes, a question over which this court has plenary review . . . that decision will be reversed only if such an order constitutes an abuse of that discretion. . . . Under the abuse of discretion standard, [w]e must make every reasonable presumption in favor of the trial court's action. . . . The trial court's exercise of its discretion will be reversed only [when] the abuse of discretion is manifest or [when] injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 775, 48 A.3d 16 (2012).

In its order denying the plaintiff's motions for compliance, the court recognized that certain communications between the defendants were protected by the attorney-client privilege and the work product doctrine. The plaintiff argues that the attorney-client privilege and the work product doctrine "appl[y] only in the previously concluded tort case," and do not protect the defendants' records from discovery in the present action. She further argues that "these materials are likely to contain statements or information concerning representations made to the plaintiff about, and the plaintiff's understanding of, the settlement and release in [the negligence action]." The defendants argue that the attorney-client privilege and the work product doctrine are not time limited, and the materials requested by the plaintiff are protected from discovery. We agree with the defendants.[7] On the limited record before us, we do not conclude that the trial court abused its discretion in denying the plaintiff's motions for compliance, nor that an injustice appears to have been done.

The judgment is reversed with respect to the plaintiff's claim of intentional misrepresentation and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] See *Kenneson* v. *Rosati*, Superior Court, judicial district of Waterbury, Docket No. CV-07-5003827-S (June 13, 2007).

[2] In the circumstances of this case, the nuances in the wording are more than merely semantic. By way of illustration, suppose that Eggert had actually said, "I cannot give you a check now to settle the claims against Altman unless you sign this release." This statement would quite unremarkably comport with the usual practice.

Suppose, on the other hand, Eggert had actually said, "General Statutes § 52-700 is such that you will never receive damages from Altman unless you sign this release." There is no evidence in this case that the latter words were specifically spoken, yet the plaintiff's alleged version of the words that were spoken is arguably consistent with the import of this statement.

The former version would not be a misrepresentation at all; the latter version arguably could support the first element of fraudulent misrepresentation.

[3] We note that the doctrine of res judicata does not apply because there were different defendants in the two proceedings.

[4] "Although the Restatement (Second) of Torts is not binding precedent, our appellate courts have frequently looked to it in outlining the contours

of tort law in this state. See, e.g., *Clohessy* v. *Bachelor*, 237 Conn. 31, 38–39, 46, 675 A.2d 852 (1996) (citing Restatement [Second] of Torts in recognizing action for bystander emotional distress); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 654, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005) (citing Restatement [Second] of Torts in adopting exception to common-law rule that punitive damages cannot be imposed based on theory of vicarious liability)." *Wild* v. *Cocivera*, Superior Court, judicial district of Hartford, Docket No. CV-146050575-S (June 16, 2016).

[5] The problem, of course, is that signing the release, although facilitating the immediate payment of almost the full amount of the verdict, would presumably prevent the recovery of any reallocation of damages assessed against the cotortfeasor. See General Statutes § 52-572h (g).

[6] The court also determined that the plaintiff's claim for fraudulent nondisclosure was precluded under the doctrine of collateral estoppel. The plaintiff argues that this determination was improper. Because we affirm the court's decision on the claim for fraudulent nondisclosure on alternative grounds, we need not reach the collateral estoppel issue for this claim.

We further note that no court has established precisely what, if anything, Eggert said. The only issue decided in this case is whether *any* information has been presented that could create a genuine issue of material fact.

[7] We note that when an insurer engages an attorney to represent an insured, the resultant attorney-client privilege belongs to the insured. See *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 730 A.2d 51 (1999); *Royal Indemnity Co.* v. *Terra Firma, Inc.*, Superior Court, judicial district of Middlesex, Docket No. X04-CV-05-4005063-S (February 1, 2007) (42 Conn. L. Rptr. 792). There is, however, "a common interest among the insured, the attorney and the insurer, and ordinarily the insured's privilege is not waived because of disclosure to the insurer." Id. Pursuant to this "common interest," the other involved parties are responsible for protecting the insured's or client's privilege. During oral argument before this court, the defendants argued that they shared this "common interest."

---