******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KIMBERLY KENNESON *v.* CELIA EGGERT ET AL.
(AC 42170)

DiPentima, C. J., and Elgo and Devlin, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney E, and
the defendant insurance company, N Co., claiming that E had committed
fraud against the plaintiff and that N Co. was vicariously liable for E's
actions. The plaintiff had previously brought an action for, inter alia,
negligence against A, who was insured by N Co., and another individual,
R. A was represented by E on behalf of N. Co. in the negligence action,
in which the jury awarded the plaintiff damages against both A and R.
Pursuant to a settlement agreement in that action, the plaintiff signed
a general release and withdrawal form in exchange for settling the case
against A. The plaintiff later discovered that she would be unable to
recover damages from R, and moved to open the judgment in the negli-
gence action, claiming that E had engaged in unfair and deceptive behav-
ior by instructing her to sign the release without explaining what it was
and how it could affect the judgment in that action. After the trial court
in the negligence action denied her motion to open and concluded that
there was no evidence that E had coerced the plaintiff into signing the
release, the plaintiff commenced the present action alleging fraud against
E and N Co. Thereafter, the court granted the defendants' motion for
summary judgment, concluding that the plaintiff was collaterally
estopped from asserting her fraud action because the issue had been
addressed in the negligence action, and the plaintiff appealed to this
court. This court reversed in part the judgment of the trial court, conclud-
ing that the trial court improperly granted the defendants' motion for
summary judgment as to the plaintiff's claim for intentional misrepresen-
tation because there were genuine issues of material fact whether that
claim had been fully and fairly litigated at the hearing on the motion to
open the negligence action, and remanded the case for further proceed-
ings. Following the remand, the defendants filed a motion to dismiss
the action on the ground that the litigation privilege barred the plaintiff's
claim. The trial court rendered judgment dismissing the action, conclud-
ing that the defendants had satisfied the requirements for absolute immu-
nity under the litigation privilege, from which the plaintiff appealed to
this court. *Held*:

1. The plaintiff could not prevail on her claims that the trial court erred in
   concluding that the litigation privilege implicated the subject matter
   jurisdiction of the court and that the defendants timely filed their motion
   to dismiss; the doctrine of absolute immunity concerns a court's subject
   matter jurisdiction and challenges to a court's subject matter jurisdiction
   can be raised at any time and cannot be waived.

2. The trial court properly granted the motion to dismiss and concluded that
   E's statements were protected by the litigation privilege; E's statements
   made during a postverdict settlement conference were made during a
   judicial proceeding, there is no requirement that statements be made
   in a courtroom, under oath, or in a pleading in order to be considered
   part of a judicial proceeding and the postverdict settlement conference
   was part of the ongoing litigation between the parties and was judicial
   in nature, and the statements were relevant to the subject matter of
   the judicial proceeding, as the purpose of the conference was for the
   defendants to reach an agreement with the plaintiff and, thus, E's state-
   ments about signing the withdrawal were relevant to the conference.

Argued November 19, 2019—officially released March 31, 2020

*Procedural History*

Action to recover damages for fraud, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Waterbury, where the court, *Roraback, J.*,
granted the defendants' motion for summary judgment

and rendered judgment thereon, from which the plaintiff appealed to this court, *Keller*, *Beach and Harper*, *Js.*, which reversed the judgment in part and remanded the case for further proceedings; thereafter, the court, *Brazzel-Massaro*, *J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Kimberly Kenneson*, self-represented, the appellant (plaintiff).

*Andrew P. Barsom*, with whom, on the brief, was *Robert D. Laurie*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. After the trial court granted the motion to dismiss filed by the defendants, Celia Eggert and Nationwide Mutual Fire Insurance Company (Nationwide), the self-represented plaintiff, Kimberly Kenneson, filed this appeal. On appeal, the plaintiff contends that the court erred by concluding that the defendants' statements and actions were protected under the litigation privilege.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and relevant procedural history, as recited in an earlier decision of this court involving these parties, are relevant to this appeal. See *Kenneson* v. *Eggert*, 176 Conn. App. 296, 170 A.3d 14 (2017). "In January, 2007, the plaintiff commenced a civil action against Carl Rosati and Michael Altman for negligence, battery and recklessness [arising from a physical altercation between Rosati and Altman that injured the plaintiff]. Altman was insured by Nationwide, and Nationwide agreed to provide Altman with a defense. Nationwide arranged for the Law Offices of John Calabrese to represent Altman. Eggert, an attorney with that firm, represented Altman at trial. The plaintiff represented herself at trial and obtained a jury verdict in her favor. The jury awarded the plaintiff damages of $67,556.07 against Altman [for negligence] and $380,037.38 against Rosati [$45,037.38 in negligence and $335,000 in recklessness]. Although he was served with process, Rosati did not appear at trial. After the verdict was accepted by the court, Altman filed a motion to set aside the verdict and a motion for collateral source reduction.

"Several weeks later, on July 18, 2011, the plaintiff, Eggert and a Nationwide claims adjuster [Shane Gingras] appeared in court for a hearing [on a motion to seal filed by the plaintiff] and a settlement conference [that Eggert requested]. At the settlement conference, Nationwide offered the plaintiff $57,000 to settle the case against Altman, which the plaintiff declined. Nationwide then offered the plaintiff $67,000, which she ultimately accepted." (Footnote omitted.) Id., 299–300.

"Pursuant to the settlement agreement, the plaintiff signed a general release and withdrawal form. The release provided, in relevant part, that '[b]y signing this release, [the plaintiff] expressly acknowledges that he/she has read this document with care and that he/she is aware that by signing this document he/she is giving up all rights and claims and causes of action, and any and all rights and claims that he/she may now have or which may arise in the future . . . against [Nationwide and Altman] . . . . Knowing this . . . he/she signs this document voluntarily and freely without duress.' The release also stated that '[the plaintiff] further acknowledges that no representation of fact or opinion

has been made to him/her by [Nationwide and Altman] . . . which in any manner has induced [the plaintiff] to agree to this settlement.' " Id., 300. The plaintiff then filed the withdrawal form with the court the following day on July 19, 2011.

"The plaintiff subsequently discovered that she was unable to collect damages against Rosati, who had been uninsured and had died without assets in August, 2013. On April 28, 2014, the plaintiff filed a motion to open the judgment and a motion to reinstate Altman as a defendant. The plaintiff argued that she did not know that signing the release would prevent her from reallocating the damages, at least in part, against Rosati to Altman and Nationwide, and that Eggert had engaged in 'unfair and deceptive' behavior when she instructed her to sign the release 'without explaining what it was and how it can affect a judgment.'

"Altman filed an objection, arguing that the release was valid and that the plaintiff was aware of the nature of the document when she signed it. On June 20, 2014, the court, *Pellegrino*, *J.*, heard oral argument on the plaintiff's motion to open. During oral argument, Judge Pellegrino questioned the plaintiff regarding the alleged fraud committed by Eggert. Judge Pellegrino ultimately denied the plaintiff's motion, noting that there was no evidence that Eggert had coerced the plaintiff into signing the release, and that the release, by its terms, provided that the plaintiff had read the document with care. The plaintiff did not appeal from Judge Pellegrino's decision.

"On July 17, 2014, the plaintiff commenced the present action against the defendants, alleging that Eggert had committed fraud against the plaintiff and that Nationwide was vicariously liable for her actions. . . . The court heard oral argument and denied the plaintiff's motions [for compliance with the court's discovery orders]. The court held that . . . the plaintiff had offered '[n]o quantum of proof . . . to support a claim of civil fraud which would permit the privilege to be pierced.'

"On December 4, 2014, the defendants filed a motion for summary judgment, arguing that the plaintiff's claim was barred by the doctrine of collateral estoppel, because Judge Pellegrino's decision on the plaintiff's motion to open in the negligence action had previously addressed the fraud issue. They also argued that the claim was barred by the terms and conditions of the release. The plaintiff filed a memorandum of law in opposition to the motion to which the defendants replied, and the parties appeared for argument on August 8, 2015. The court held that the plaintiff was collaterally estopped from asserting her fraud claims and that, even if collateral estoppel did not apply, the defendants were entitled to summary judgment because the plaintiff was unable to prove her claims for com-

mon-law fraud." Id., 300–302.

The plaintiff then appealed to this court. In that appeal, she argued that the court erred by concluding that the intentional misrepresentation aspect of her fraud claim was barred by collateral estoppel. Id., 299. This court noted that, in her amended complaint filed in December, 2014,[2] the plaintiff essentially alleged two claims of fraud: intentional misrepresentation and fraudulent nondisclosure. The plaintiff first alleged that Eggert "falsely represented to the plaintiff . . . that she would not get any of her $67,556.07 award against . . . Altman unless she signed a document . . . to settle the judgment . . . ." (Internal quotation marks omitted.) Id., 303. Second, the plaintiff alleged that "Eggert, with the intent to deceive the plaintiff, knowingly failed to disclose and/or concealed that [the release and the withdrawal] would result in the loss of the plaintiff's right to reallocate damages . . . ." (Internal quotation marks omitted.) Id., 303. This court reversed the trial court's determination that there was no genuine issue of material fact on the plaintiff's intentional misrepresentation claim; id., 307; but affirmed the court's determination that she was collaterally estopped from raising the fraudulent nondisclosure aspect of her fraud claim. Id., 312. The matter was remanded back to the trial court. Id., 314.

Following the remand, the defendants filed the motion to dismiss that is the subject of this appeal. In their memorandum of law in support of the motion, the defendants argued that the litigation privilege[3] barred the plaintiff's claim and, as a result, the court lacked subject matter jurisdiction. The trial court, *Brazzel-Massaro, J.*, agreed with the defendants and granted their motion to dismiss. The court found that the defendants had satisfied the requirements for absolute immunity under the litigation privilege. This appeal followed. Additional facts will be set forth as necessary.

We begin with the well established standard of review for reviewing a trial court's decision on a motion to dismiss. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." *Metcalf* v. *Fitzgerald*, 333 Conn. 1, 6–7, 214 A.3d 361 (2019), cert. denied,     U.S.    , 140 S. Ct. 854,

We next set forth the relevant law applicable to the litigation privilege. "As the doctrine of absolute immunity concerns a court's subject matter jurisdiction . . . we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity." (Internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 724–25, 161 A.3d 630 (2017).

"Connecticut has long recognized the litigation privilege . . . [and has extended it] to judges, counsel and witnesses participating in judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 536–37, 69 A.3d 880 (2013). This court recently summarized the state of the litigation privilege in Connecticut: "In *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 79 A.3d 60 (2013), our Supreme Court explained: In *Simms* [v. *Seaman*, supra, 531], we noted that the doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . We further noted that . . . [t]he general rule is that defamatory words spoken upon an occasion absolutely privileged, though spoken falsely, knowingly, and with express malice, impose no liability for damages recoverable in an action in slander . . . . [W]e further discussed the expansion of absolute immunity to bar retaliatory civil actions beyond claims of defamation. For example, we have concluded that absolute immunity bars claims of intentional interference with contractual or beneficial relations arising from statements made during a civil action. See *Rioux* v. *Barry*, [283 Conn. 338] 350–51, [927 A.2d 304 (2007)] (absolute immunity applies to intentional interference with contractual relations because that tort comparatively is more like defamation than vexatious litigation). We have also precluded claims of intentional infliction of emotional distress arising from statements made during judicial proceedings on the basis of absolute immunity. See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 263–64, 597 A.2d 807 (1991). Finally, we have most recently applied absolute immunity to bar retaliatory claims of fraud against attorneys for their actions during litigation. See *Simms* v. *Seaman*, supra, 545–46. In reviewing these cases, it becomes clear that, in expanding the doctrine of absolute immunity to bar claims beyond defamation, this court has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process." (Cita-

tions omitted; internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 725–27.

In this appeal, the plaintiff contends that the court erred by finding that the statements Eggert made as part of the postverdict settlement conference were protected by the litigation privilege. The defendants argue that the court correctly found that the statements were protected by the litigation privilege and, accordingly, that the court lacked jurisdiction over the plaintiff's intentional misrepresentation claim.[4] We agree with the defendants.

The applicability of the litigation privilege depends on whether the statement or action at issue, here, intentional misrepresentation, took place during a judicial proceeding. "[I]n determining whether a statement is made in the course of a judicial proceeding, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides. . . . In making that determination, the court must decide as a matter of law whether the . . . statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, so as to qualify for the [litigation] privilege. The test for relevancy is generous, and judicial proceeding has been defined liberally to encompass more than civil litigation or criminal trials." (Citation omitted; internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 839, 925 A.2d 1030 (2007). "The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 566, 606 A.2d 693 (1992).

Accordingly, we first determine whether the trial court properly found that the statements at issue in this case were made during a judicial proceeding. If so, we then consider whether the trial court properly found that the alleged misrepresentation is sufficiently relevant to the issues involved in those proceedings. See *Ravalese* v. *Lertora*, 186 Conn. App. 722, 730, 200 A.3d 1153 (2018) ("we must determine whether the proceedings at issue in this case were judicial or quasi-judicial in nature and, if so, we then must consider whether the [statement] is sufficiently relevant to the issues involved in those proceedings").

Here, the plaintiff argues that the statements made by the defendants are not covered by the litigation privilege

because the settlement discussion occurred outside of a courtroom. The crux of the plaintiff's argument is that because the statements were not made in pleadings or other documents, nor under oath or before the court, the statements were not made in the course of a judicial proceeding. We disagree with the plaintiff.

There is no requirement under Connecticut jurisprudence that to be considered part of a judicial proceeding, statements must be made in a courtroom or under oath or be contained in a pleading or other documents submitted to the court. Indeed, "[t]he privilege extends beyond statements made during a judicial proceeding to preparatory communications that may be directed to the goal of the proceeding." (Internal quotation marks omitted.) *Tyler* v. *Tatoian*, 164 Conn. App. 82, 88, 137 A.3d 801, cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). In addition, our Supreme Court has "recognized that the absolute privilege that is granted to statements made in furtherance of a judicial proceeding extends to every step of the proceeding until final disposition." *Hopkins* v. *O'Connor*, supra, 282 Conn. 826.

Here, the discussion in the hallway, as part of the postverdict settlement conference, was a step in the ongoing judicial proceeding. A postverdict settlement conference, such as the one in the present case, is judicial in nature. The conference was part of the ongoing litigation between the plaintiff and Eggert's client, Michael Altman. On July 11, 2011, Eggert sent a letter to Judge Ozalis to request a postverdict settlement conference for July 18, 2011. On that date, the parties appeared before Judge Matasavage for the conference. In requesting the conference, Eggert expressly stated that the goal for the conference was that an "agreement . . . be reached with the plaintiff with the court's assistance." Accordingly, the plaintiff's argument that Eggert's statements were not made during a judicial proceeding fails.

We now turn to the question of whether the court properly concluded that the statements were "sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding . . . ." *Hopkins* v. *O'Connor*, supra, 282 Conn. 839. As discussed above, "[t]he test for relevancy is generous . . . ." Id.

The plaintiff argues that Eggert's statements about signing the withdrawal were not relevant to the subject matter of the proceeding. She further argues that the statements did not contain any facts, law or arguments that were relevant to the original underlying tort claim that she had brought against Altman and Rosati. Therefore, the plaintiff contends, those statements are not covered by the litigation privilege. The defendants counter that the court correctly concluded that the statements were relevant to the underlying subject matter of the judicial proceeding. We agree with the defendants.

The record reveals that Eggert's statements at issue are relevant to the subject matter of the judicial proceeding. The parties met to settle the action brought by the plaintiff against Altman, Eggert's client. Indeed, the purpose of the postverdict conference was to reach an "agreement . . . with the plaintiff with the court's assistance." As the court noted, the statements at issue were part of a conference to resolve the underlying tort action initiated by the plaintiff. Accordingly, the court correctly found that the absolute immunity of the litigation privilege applied to bar the action.

In accordance with our Supreme Court precedent, the plaintiff's claim of fraud based on statements made during the postverdict settlement conference is barred by the litigation privilege. Absolute immunity applied to the statements made by Eggert that are at issue in this appeal. The statements were made during a judicial proceeding, and they were relevant to the subject matter of the ongoing litigation. Therefore, the trial court lacked subject matter jurisdiction over the plaintiff's fraud claim against Eggert and Nationwide. The court properly granted the defendants' motion to dismiss.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also argues that the court erred in concluding that the litigation privilege implicates the subject matter jurisdiction of the court and that the defendants timely filed their motion to dismiss. Both of these arguments fail. First, "the doctrine of absolute immunity concerns a court's subject matter jurisdiction." *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 724, 161 A.3d 630 (2017). Second, the subject matter jurisdiction of the court can be challenged at any time. See *Stroiney* v. *Crescent Lake Tax District*, 205 Conn. 290, 294, 533 A.2d 208 (1987) ("[a] motion to dismiss for lack of subject matter jurisdiction may be made at any time"). Furthermore, challenges to the court's subject matter jurisdiction cannot be waived. See Practice Book § 10-33 ("[a]ny claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action").

[2] This complaint remains the operative complaint for the present appeal.

[3] The terms "absolute immunity" and "litigation privilege" are used interchangeably throughout this opinion.

[4] As set forth previously in this opinion, the plaintiff's December, 2014 amended complaint contained two fraud claims: intentional misrepresentation and fraudulent nondisclosure. Her fraudulent nondisclosure claim was found to be collaterally estopped, but her intentional misrepresentation claim survived the defendants' previous motion for summary judgment. See *Kenneson* v. *Eggert*, supra, 176 Conn. App. 314.

[5] We note that the plaintiff was not without alternative remedies. See *Simms* v. *Seaman*, supra, 308 Conn. 552–54 (summarizing other avenues that can be used to hold attorneys accountable for misconduct, such as filing motion to open judgment, or filing grievance against attorney under Rules of Professional Conduct, among others).