******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID RAVALESE *v.* JOANNE M. LERTORA
(AC 40044)

DiPentima, C. J., and Alvord and Lavery, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, defamation, claiming that that the defendant, who is a psychologist, authored a report that unfairly characterized him as a child abuser and a sociopath. The plaintiff and R were involved in protracted and contentious postdissolution custody and visitation proceedings. During the course of those proceedings, R's attorney forwarded R an e-mail requesting that she ask the defendant, who had provided psychotherapy to the minor child of the plaintiff and R, to draft a report summarizing the defendant's insights regarding the appropriate custody and visitation arrangements for the child. R asked the defendant to compose the requested report, and the defendant subsequently authored a report and provided a copy of that report to R. Thereafter, the plaintiff commenced the present action, and the defendant filed a motion for summary judgment on the plaintiff's defamation claim, which the trial court granted. From the judgment rendered thereon, the plaintiff appealed to this court, claiming, inter alia, that the trial court erred in holding that the defendant's report was prepared for the purpose of litigation and, thus, that the defendant's statements therein were protected by absolute immunity. *Held* that the trial court properly rendered summary judgment in favor of the defendant and determined that the defendant's publication of her report for the anticipated purpose of serving as an aid to the court and the guardian ad litem in the postdissolution custody proceedings was protected by absolute immunity; a postdissolution proceeding, such as the one in the present case, is judicial in nature, and the defendant's report was sufficiently relevant to the issues involved in the present proceeding so as to qualify for the litigation privilege, as the report was made at the request of R's attorney, who sought to use the report to assist the trial court and the guardian ad litem in the custody proceedings, the plaintiff and R signed an agreement to make the report available to their attorneys and to the guardian ad litem, the report pertained to factors relevant to the court's consideration of the child's best interests, and although the report was not admitted as an exhibit during the postdissolution proceedings, there was no genuine dispute of a material fact that the defendant prepared it for the purpose of resolving the continuing postdissolution litigation between the plaintiff and R.

Argued September 12—officially released December 18, 2018

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Elgo, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Keith Yagaloff*, for the appellant (plaintiff).

*Michael R. McPherson*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, David Ravalese, appeals from the summary judgment rendered by the trial court in favor of the defendant, Joanne M. Lertora, on his complaint sounding in defamation. On appeal, the plaintiff sets forth two main claims: (1) the court improperly held that a report authored by the defendant was made for the purpose of litigation and, therefore, that the plaintiff's action for defamation was barred by the doctrine of absolute immunity; and (2) the court improperly held that the statute of limitations barred the action.[1] We affirm the judgment of the court.

The following facts and procedural history are relevant to our decision. In 2000, the court dissolved the marriage of the plaintiff and Kimberly Ravalese, whom we refer to jointly as the Ravaleses. Following the dissolution of their marriage, the Ravaleses were involved in protracted and contentious postjudgment custody and visitation proceedings. In February, 2004, the court appointed a guardian ad litem for their minor child. Between 2004 and 2012, the Ravaleses were involved in numerous court proceedings, including, inter alia, various motions for contempt that had been filed by the plaintiff, a court-ordered appointment of a new guardian ad litem for the minor child, and a court-ordered study for parental alienation. The defendant is a psychologist, who provided individual psychotherapy to the minor child on or about September, 2004 through December, 2010.

During the course of these proceedings, in early 2010, Kimberly Ravalese's attorney, Fatima Lobo, forwarded to Kimberly Ravalese an e-mail, requesting that she ask the defendant to draft a report summarizing the defendant's insights regarding the appropriate custody and visitation arrangements for the child. Kimberly Ravalese then gave the defendant a hard copy of this e-mail and asked the defendant to compose the requested report.

In response, the defendant composed a report summarizing her assessment. Both the plaintiff and Kimberly Ravalese signed an agreement authorizing the defendant to make the report available to their respective attorneys and to the child's guardian ad litem, Emily Moskowitz. The defendant attests that she provided a copy of her report only to Lobo and to Kimberly Ravalese.[2]

In the report, the defendant discussed, among other things, the child's reports of the plaintiff's engaging in abusive behavior, the defendant's opinion that the plaintiff's behavior warranted a personality disorder diagnosis, and the defendant's recommendations regarding visitation between the plaintiff and his minor child. Lobo attempted to introduce the report into evidence at a July 8, 2010 postdissolution court hearing,

but was unsuccessful because the child's guardian ad litem, Moskowitz, asserted the psychologist-patient privilege, and the court, thereafter, declined to admit the report.[3] In August, 2011, Kimberly Ravalese filed a grievance against Moskowitz with the Statewide Grievance Committee (grievance committee). The plaintiff alleges in his operative complaint that during the grievance proceedings, Kimberly Ravalese provided the defendant's report to the grievance committee.

The plaintiff filed a complaint, dated May 28, 2013, in the Superior Court against the defendant, sounding in defamation and several other theories of liability.[4] The plaintiff alleged in relevant part that the defendant, in the report she had authored, unfairly characterized him as a child abuser and a sociopath. In the operative complaint, the plaintiff describes two separate instances that he alleges constitute defamation: (1) when the defendant provided the report to Kimberly Ravalese in June, 2010; and (2) when Kimberly Ravalese allegedly submitted the report to "the grievance committee, and to attorneys representing the parties in that matter, to various individuals involved in the hearing, including mental health professionals."

In response to the plaintiff's operative complaint, the defendant pleaded several special defenses, namely, that the statements in the report are truthful, that they are statements of opinion, that they are absolutely privileged because they were published in connection with judicial or quasi-judicial proceedings, that they were published in good faith, with the health and welfare of a child in mind, and, therefore, that they are protected by a qualified privilege, that the plaintiff's defamation count is barred by the statute of limitations contained in General Statutes § 52-597, and that the plaintiff failed to mitigate any potential harm.

Following a lengthy series of pretrial motions, on May 31, 2016, the defendant filed a motion for summary judgment on the remaining count in the operative complaint, the defamation count, which was argued before the court on September 6, 2016.

On January 4, 2017, the court issued a memorandum of decision in which it granted the defendant's motion for summary judgment, and rendered judgment in favor of the defendant. The court analyzed both the defendant's statute of limitations and absolute immunity defenses. As to the defendant's statute of limitations defense, the court considered the plaintiff's claim that the defendant was liable for the publication of the report when it was presented to the grievance committee. The court reasoned that the defendant could not be held responsible for the alleged publication of the report to the grievance committee because there was no dispute that the defendant, herself, had not published the report to that committee.[5] Moreover, the court determined that the only publication by the defendant had occurred long

before the grievance committee proceeding. Accordingly, the court held that the plaintiff's May, 2013 action was barred by the applicable statute of limitations; see General Statutes § 52-597 ("[n]o action for libel or slander shall be brought but within two years from the date of the act complained of"); because the only potentially actionable instance of publication was when the defendant delivered her report to Kimberly Ravalese in June, 2010, which occurred outside the applicable two year statute of limitations.

Additionally, the court determined that the statements made by the defendant in her report were protected by absolute immunity. Reasoning that "there is compelling public policy to ensure that those who are witnesses in dissolution actions, especially those in highly contentious proceedings where children are involved, must be able to speak freely without the chilling effect of the threat of litigation," the court held, alternatively, that the defamation action also was barred by the doctrine of absolute immunity. This appeal followed.

On appeal, the plaintiff claims, in relevant part, that the court erred in holding that the defendant's report was prepared for the purpose of litigation and that the defendant's statements therein are cloaked with absolute immunity. Although the plaintiff agrees that Connecticut has long recognized the doctrine of absolute immunity, which also is referred to as the litigation privilege; see *Simms* v. *Seaman*, 308 Conn. 523, 531–40, 69 A.3d 880 (2013); the plaintiff contends that the defendant was not court appointed and her report was not prepared for the purpose of litigation and, thus, should not have been considered privileged. We disagree.

"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 829, 925 A.2d 1030 (2007). Additionally, whether absolute immunity applies is a question of law over which our review is plenary. See *Simms* v. *Seaman*, supra, 308 Conn. 530.

We next set forth the relevant law applicable to defamation and the litigation privilege. "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from

associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 838. As our Supreme Court has stated on several occasions, and as the court in this matter recognized, "if, however, the communications are uttered or published in the course of judicial proceedings, even if they are published falsely and maliciously, they nevertheless are absolutely privileged provided they are pertinent to the subject of the controversy." Id.

Connecticut has long recognized the litigation privilege. See *Simms* v. *Seaman*, supra, 308 Conn. 536–40 (discussing history of litigation privilege in Connecticut). "[T]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions . . . ." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 627–28, 79 A.3d 60 (2013).

"The rationale underlying the privilege is grounded upon the proper and efficient administration of justice. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits. . . . Therefore, in determining whether a statement is made in the course of a judicial proceeding, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides. . . . In making that determination, the court must decide as a matter of law whether the allegedly defamatory statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, so as to qualify for the [litigation] privilege. The test for relevancy is generous, and judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal

trials." (Citations omitted; internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 839.

Accordingly, we must determine whether the proceedings at issue in this case were judicial or quasi-judicial in nature and, if so, we then must consider whether the report is sufficiently relevant to the issues involved in those proceedings. See *Kelley* v. *Bonney*, 221 Conn. 549, 566, 571, 606 A.2d 693 (1992). "The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Internal quotation marks omitted.) Id., 566.

A postdissolution proceeding, such as the one in the present case, is judicial in nature. Neither party disputes that fact. The plaintiff's central argument is that the defendant was not performing a judicial function because she was not requested by the court to author the report in question, the report never was admitted as an exhibit during the postdissolution proceedings, and the defendant published the report to Kimberly Ravalese in addition to the attorneys and the guardian ad litem, which was beyond the scope of the agreement between the plaintiff and Kimberly Ravalese.[6]

First, although we agree that the court did not request the report, it is clear from the facts set forth in the defendant's affidavit that the purpose of her report was to aid the guardian ad litem and the court in the Ravaleses' continuing custody matter, upon the request of Lobo. Second, although the report was not admitted as an exhibit, it, nonetheless, remains clear that the defendant prepared the report to *further the purpose* of resolving the Ravaleses' continuing postdissolution litigation.

Under the doctrine of absolute immunity, "[t]he scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding. . . . The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course,

that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 832. To this end, our Supreme Court has held that allegedly defamatory written statements drafted for submission to the state board of education incident to a complaint that had been filed with that board and communication with a potential witness for the purpose of marshaling evidence for use in the state board of education proceedings were absolutely privileged. *Kelley* v. *Bonney*, supra, 221 Conn. 572–74.

It is well established that a statement made as a preliminary step in litigation does not disqualify it from being absolutely privileged. See *Hopkins* v. *O'Connor*, supra, 282 Conn. 832. In determining whether a communication is protected by absolute immunity, "the court must decide as a matter of law whether the allegedly defamatory statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding . . . ." Id., 839.

A court in a postdissolution proceeding has the authority to "make or modify any proper order regarding the custody, care, education, visitation and support" of any minor children. General Statutes § 46b-56 (a). Pursuant to § 46b-56 (c), "the court shall consider the best interests of the child," and in doing so, may consider the following relevant factors: "(1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child . . . (5) the past and current interaction and relationship of the child with each parent . . . (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child . . . (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved . . . (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; [and] (15) whether the child or a sibling of the child has been abused or neglected . . . ."

The defendant's report was made at the request of Lobo, who sought to use the report to assist the court and the guardian ad litem in the custody proceedings. Both parties to the dissolution signed an agreement to make the report available to their attorneys and to the child's guardian ad litem. Thus, even though the defendant's report ultimately was not admitted as an exhibit, it is clear that there is no genuine dispute of material fact that the defendant prepared it for that purpose. It is also clear that the report pertained to factors relevant to the court's consideration of the child's best interests.

Therefore, we agree with the court's conclusion that the defendant's publication of her report for the anticipated purpose of serving as an aid to the court and the guardian ad litem in the postdissolution custody proceedings was protected by absolute immunity. Accordingly, the court properly rendered summary judgment in favor of the defendant.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The primary focus of the plaintiff's brief is on his claim that the court improperly determined that the defendant was entitled to absolute immunity for the statements set forth in her report. The plaintiff also briefly addresses his claim that the court improperly held that the statute of limitations barred the action, which was an alternative basis for the court's rendering summary judgment. Any other issues mentioned in the plaintiff's brief are not briefed adequately and, therefore, do not merit our review. *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016) ("[c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion" [internal quotation marks omitted]).

[2] In his complaint, the plaintiff alleges that the defendant provided the report to the attorneys, the guardian ad litem, and Kimberly Ravalese. This discrepancy between the defendant's affidavit and the allegation in the plaintiff's complaint is not crucial to our decision. The plaintiff argues that the releases signed by him and Kimberly Ravalese did not authorize delivery of the report to either himself or to Kimberly Ravalese, and that Kimberly Ravalese should not have received or read the report.

[3] Nonetheless, in 2012, the Ravaleses entered into a formal agreement, which became a court order, in which they agreed that the defendant's report, among other reports, "shall be made available to the Family Treatment Coordinator and to any other mental health professionals working with the Ravalese family, at the discretion of said Family Treatment Coordinator and the Guardian Ad Litem."

[4] On May 30, 2013, the plaintiff filed his initial complaint in the Superior Court sounding in defamation and several other theories of liability. After the plaintiff filed a revised complaint, the defendant filed a motion to strike all the counts, with the exception of the defamation count. The court granted this motion to strike. The plaintiff subsequently filed a revised substitute complaint to which the defendant again moved to strike each theory of liability except defamation. The court again granted the defendant's motion to strike, and the plaintiff elected not to replead. Accordingly, the operative complaint is the plaintiff's revised substitute complaint, and the only remaining count in that complaint is the count sounding in defamation.

[5] Specifically, the court stated: "There is no dispute that [the defendant] did not know of, nor did she authorize, the 'publication' of the [report] in the grievance proceedings."

[6] The plaintiff also contends that the fact that the defendant published the report to Kimberly Ravalese is problematic because Kimberly Ravalese then published the report to the grievance committee. He argues that had the defendant adhered to the Ravaleses' agreement that the report could be disseminated to the attorneys and the guardian ad litem, there would have been no publication to that committee.

Attached to her motion for summary judgment, the defendant submitted an affidavit in which she attested: "I had no knowledge that Kimberly Ravalese intended to file a grievance complaint against Attorney Emily Moskowitz with the Statewide Grievance Committee," and that "I did not assist Kimberly Ravalese in preparing or filing her grievance complaint against Attorney Moskowitz, nor did I approve or authorize her to include my May 25, 2010 report with it." The plaintiff provided no evidence to challenge the defendant's sworn statements. Moreover, as stated by the court in this case, there is "no dispute that [the defendant] did not know of, nor did she authorize, the 'publication' of the [report] in the grievance proceedings."

As part of the plaintiff's argument that a genuine issue of material fact exists as to whether the defendant may have provided Kimberly Ravalese with *a second copy* of the report for purposes of sharing it with the grievance committee, the plaintiff also argues that the defendant owed him a continuing duty to either retract her statements or to prevent others from republishing it. The court rejected this argument.

As specifically stated by the court: "[T]he plaintiff does not dispute that the defendant herself did not publish the [report] in the instances subsequent to when she gave the [report] to Lobo and Kimberly Ravalese . . . ." Although the actions of Kimberly Ravalese may have resulted in the defendant's report being presented to the grievance committee, the plaintiff offers no evidence to challenge the defendant's sworn statement that she did not know that Kimberly Ravalese was going to file a grievance against the guardian ad litem and that she neither encouraged, assisted, nor authorized Kimberly Ravalese to provide a copy of the report to the grievance committee.

In this case, the record reveals that the plaintiff and Kimberly Ravalese signed a release authorizing the defendant to disclose the contents of her report to the attorneys representing each party to the dissolution and to the minor child's guardian ad litem. The defendant provided the report to Lobo and to Kimberly Ravalese to assist the guardian ad litem and the court in the custody proceedings. There is no evidence that the defendant had any way of knowing that Kimberly Ravalese would use the report in any manner inconsistent with its purpose, and, in fact, the evidence demonstrates that she did not know that Kimberly Ravalese would use the report in a manner inconsistent with the purpose for which it was written.

Therefore, we agree with the court's conclusion that the defendant is not liable for Kimberly Ravalese's publication of the defendant's report to the grievance committee.

[7] Furthermore, although our conclusion that the court properly rendered summary judgment on the basis of absolute immunity is dispositive of this case, because the court addressed the merits of the defendant's statute of limitations defense, and the parties have briefed this issue, we also conclude that even if summary judgment was not proper on the basis of absolute immunity, the action nonetheless would be barred under the applicable statute of limitations.

As we discussed in footnote 6, we agree with the court's determination that the evidence demonstrated that the only actionable instance presented in the plaintiff's complaint is the defendant's delivery of her May 25, 2010 report to Kimberly Ravalese and Lobo. As to that event, the defendant's affidavit provides that the defendant both mailed a copy of this report to Lobo and gave a copy of this report to Kimberly Ravalese "sometime before the Ravaleses' family court hearing on June 2, 2010." Accordingly, the statute of limitations expired at the latest on June 2, 2012. Therefore, the May 28, 2013 date of service of process on the plaintiff's initial complaint was outside the time within which the plaintiff properly could bring suit. See General Statutes § 52-597 ("[n]o action for libel or slander shall be brought but within two years from the date of the act complained of").