******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

GORDON MACCALLA ET AL. *v.* AMERICAN
MEDICAL RESPONSE OF
CONNECTICUT, INC.
(AC 40782)

DiPentima, C. J., and Lavine and Moll, Js.

*Syllabus*

The six plaintiffs, emergency medical responders employed by the defen-
dant, brought this action against the defendant in 2012 alleging claims
for promissory estoppel. After several delays in the production of the
plaintiffs' discovery responses, depositions of the plaintiffs were sched-
uled to take place at the office of the plaintiffs' counsel in July, 2017.
On the first day of depositions, counsel for the defendant arrived with S,
a corporate representative for the defendant, and the plaintiffs' counsel
objected that there was no advance notice given of S's attendance. After
completing the deposition of the plaintiff M, the plaintiffs' counsel stated
that S was being considered a trespasser, and the defendant's counsel
cancelled the remaining depositions and left the premises. Shortly there-
after, the defendant filed a motion for nonsuit or default and entry of
judgment of dismissal or other appropriate sanctions against all of the
plaintiffs except for M. Following a hearing, the trial court rendered
judgment dismissing the case as to all of the plaintiffs, from which the
plaintiffs appealed to this court. They claimed that the trial court erred
in dismissing their case solely on the basis of the conduct of counsel
and in dismissing the claim of M, who had complied with his discovery
obligations and was not named in the defendant's motion for nonsuit.
*Held*:
1. The trial court erred in dismissing M's claim sua sponte; the defendant
never alleged M was noncompliant with a discovery order issued by the
trial court and never sought sanctions against that particular plaintiff.
2. The trial court did not abuse its discretion in dismissing the claims of
the other five plaintiffs: the actions of the plaintiffs' counsel at the
plaintiffs' depositions were unprofessional and unacceptable, as the
conduct of the plaintiffs' counsel in labeling a party's corporate represen-
tative attending a deposition a trespasser evinced a disregard for the
provisions of the rules of practice and the authority of the court, and
the plaintiffs' explanation that the accusation against S as a trespasser
was being made out of concern for the fairness of the depositions was
unavailing, as both of the plaintiff deponents stated that they did not
feel physically threatened by S and indicated a willingness to proceed
with their depositions despite S's presence; moreover, the defendant
sought sanctions for the plaintiffs' noncompliance with a discovery
order, which was not directed solely to the plaintiffs' counsel, and the
court's dismissal was predicated, at least in part, on the plaintiffs' failure
to prepare their case properly, as the trial court determined that the
case was not ready for trial despite the fact that the plaintiffs had been
afforded more than four years to prepare.

Argued November 26, 2018—officially released March 5, 2019

*Procedural History*

Action, in the first case, to recover damages for, inter
alia, promissory estoppel, and for other relief, and
action, in the second case, to recover damages for anti-
trust violations, and for other relief, brought to the
Superior Court in the judicial district of New Haven,
where the court, *B. Fischer, J.*, granted the defendant's
motion to strike the amended complaint in part in the
first case; thereafter, the court, *Abrams, J.*, granted the
defendant's motion to consolidate; subsequently, the

court granted the defendant's motion to dismiss and motion for an order of nonsuit in the first case and rendered judgment thereon, from which the plaintiffs appealed to this court; thereafter, the court, *Nazzaro, J.*, granted the defendant's motion to dismiss in the second case and rendered judgment thereon; subsequently, the court, *Abrams, J.*, filed an order in response to this court's request for rectification. *Reversed in part*; *further proceedings*.

*Mark S. Kliger*, with whom, on the brief, was *Irving J. Pinsky*, for the appellants (plaintiffs).

*John M. Barr*, pro hac vice, with whom, were *Carolyn A. Trotta* and, on the brief, *David C. Salazar-Austin*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiffs, Gordon MacCalla, Alexis Scianna, Tyler Grailich, John Cronin, Timothy J. Yurksaitis, and Cate Saidler, appeal from the judgment of the trial court dismissing their action against the defendant, American Medical Response of Connecticut, Inc., as a sanction for the unprofessional and dilatory conduct of the plaintiffs' counsel, Attorney Irving Pinsky, during discovery. On appeal, the plaintiffs claim that the trial court erred in dismissing (1) the plaintiffs' case solely on the basis of counsel's conduct and (2) the claim of MacCalla, who had in fact complied with his discovery obligations and was not named in defendant's motion for nonsuit. We agree with the plaintiffs' second claim and reverse the judgment of dismissal as to Mac-Calla. We affirm the judgment of dismissal in all other respects.

The following undisputed facts and procedural history are relevant to this appeal. On December 14, 2012, the plaintiffs initiated this action (2012 case) against the defendant. The operative complaint, sounding in promissory estoppel, alleged that the plaintiffs were emergency medical responders employed by the defendant and, prior to their employment, the defendant made a "clear and unambiguous promise" to each of them that they could retain simultaneous employment with Valley Emergency Medical Service, Inc. and/or Danbury Ambulance Service, Inc., while also working for the defendant. The complaint also alleged that, after they were hired, the defendant unilaterally withdrew its approval of simultaneous employment and requested that they either discontinue working for the other ambulance services or resign. The complaint alleged that they came to work for the defendant in reliance on the defendant's promise and that enforcement of this promise was "essential to avoid injustice and detriment." While this case was pending, the plaintiffs initiated a separate action (2016 case) against the defendant on August 11, 2016, alleging damages as a result of the defendant's violation of one or more provisions of the Connecticut Antitrust Act, General Statutes § 35-24 et seq. The 2016 case was consolidated with the 2012 case.

On February 7, 2017, the defendant sent six sets of interrogatories and, purportedly, requests for production to Pinsky's office. On February 16, 2017, each plaintiff filed a motion for extension of time, seeking an additional thirty days in which to respond to the "interrogatories and requests for production"; the defendant did not object. Despite the extension, the plaintiffs failed to submit responses prior to the date they were due.[1] On April 25, 2017, the defendant filed a motion for order of compliance as to each of the six plaintiffs.

Contemporaneously, the defendant sought to schedule depositions of the six plaintiffs. The depositions

were noticed originally for May 3 and 4, 2017, in Hartford. The plaintiffs agreed to the dates but requested that the location be moved to New Haven; the defendant assented and resent notice of the depositions accordingly. On April 26, 2017, as a result of the plaintiffs' failure to provide timely discovery responses, the defendant's counsel, Attorney David Salazar-Austin, e-mailed Pinsky, informing him that the depositions would not go forward. The next day, Pinsky replied that the discovery responses would be provided on or before May 12, 2017, and that the plaintiffs were available to be deposed on May 25, 26, and 31, and on June 1, 2017. In response, the defendant noticed the depositions for May 25 and 26, to be held at Pinsky's office in New Haven.

On May 12, 2017, the plaintiffs provided responses and objections to the defendant's interrogatories. In response to the defendant's inquiry as to why the plaintiffs did not respond to the requests for production, Pinsky claimed that he never received any such requests. In an e-mail sent to Pinsky, Salazar-Austin was skeptical of this assertion, contending that the interrogatories and requests for production had been sent as a single document. In the same e-mail, Salazar-Austin asked that the plaintiffs respond promptly to the requests for production and sought to reschedule the plaintiffs' depositions. In his reply e-mail, Pinsky iterated that he had not received the requests for production and indicated that his clients would not be available for depositions until sometime between "very late June and mid-July." Because jury selection was scheduled to begin in early August, the defendant was not amenable to this time frame and filed a request for adjudication of the discovery dispute with the court.

On June 5, 2017, the court held a hearing on the defendant's request for adjudication. At the hearing, the parties agreed that the plaintiffs would provide responses to the requests for production by July 7, 2017, and that the plaintiffs' depositions would be held at Pinsky's office on July 17 and 18, 2017. Although the plaintiffs argue in their brief that this agreement was never adopted as a court order, the hearing transcript clearly indicates otherwise:

"[The Plaintiffs' Counsel]: My understanding is production by July 7 and depositions to be taken . . . [on July 17 and 18]; is that correct?

"[The Defendant's Counsel]: Yes.

"[The Plaintiffs' Counsel]: Yes. Okay.

"The Court: Okay. That's now an order of the court."

Consistent with the parties' agreement and the court's order, the plaintiffs, with the exception of Saidler, provided complete responses to the defendant's requests for production, and their depositions, starting with MacCalla, were scheduled for July 17, 2017. On that date, Salazar-Austin and Attorney John M. Barr arrived at

Pinsky's office to conduct the depositions on behalf of the defendant. Accompanying them was the defendant's corporate representative, William Schietinger. Upon learning that Schietinger would be attending the depositions, the plaintiffs' counsel, Attorney Mark Kliger, objected on the ground that the Practice Book required the defendant to provide prior notice. Following a review of the Practice Book, the parties agreed that notice was required only if the deposition was to be held by remote electronic means.[2] Nonetheless, at the start of MacCalla's deposition, the following colloquy occurred:

"[Barr]: Before we get started, opposing counsel wants to make an objection on the record. So please go ahead. Did you want to object?

"[Kliger]: Yes, I want to put something on the record. On behalf of Mr. MacCalla, Attorney Mark Kliger from Irving Pinsky's office.

"Mr. Schietinger from [American Medical Response of Connecticut, Inc.] is present here at the deposition. He's sitting at the table where the deposition is being conducted. Counsel for [American Medical Response of Connecticut, Inc.] did not tell us in advance that Mr. Schietinger would be attending the deposition. My client, Mr. MacCalla, has indicated he feels a sense of intimidation by Mr. Schietinger's presence, and so we're going to preserve any right we have to object to Mr. Schietinger's presence.

"We quoted Section 13-30 in support of our position, and there may be other Practice Book provisions as well which apply specifically to the fact that we were not given notice in advance of Mr. Schietinger's attendance at the deposition, and we did not consent to it, and also again bearing in mind Mr. MacCalla has indicated to me that he feels a sense of intimidation by Mr. Schietinger's presence.

"Again, we want to preserve all rights we have with regard to an objection to this deposition and the way it's being conducted. That's it."

Despite Kliger's objection, Schietinger was present at MacCalla's deposition. MacCalla testified that he did not feel physically threatened by Schietinger and, although he indicated that he was intimidated "[s]lightly" by Schietinger's presence, did not object to proceeding with the deposition. After MacCalla's deposition, the parties took a lunch break and then reconvened for the deposition of Yurksaitis. During Yurksaitis' deposition, Kliger stated the following:

"[Kliger]: Okay. Also on that subject, Mr. Pinksy has asked me to place on the record as part of the objection that since Mr. Schietinger was not invited on Mr. Pinsky's property, that Mr. Pinsky considers Mr. Schietinger to be a trespasser.

"[Barr]: Well, then we need to leave because if Mr. Pinsky considers him to be a trespasser, I'm not going to put my client at risk of arrest, and we'll just have to take it up with the judge. You better go talk to Mr. Pinsky really fast, because if my client is a trespasser, I am not having him subject to arrest."

When Kliger returned after speaking with Pinsky, he stated the following:

"[Kliger]: Okay. I've checked with Mr. Pinsky, and his position is if Mr. Schietinger is going to be—he considers Mr. Schietinger to be a trespasser, someone who's not invited on the property and was not invited to participate in the deposition."

After a short discussion, in which Yurksaitis stated that he did not feel physically intimidated by Schietinger, the defendant's counsel suspended the deposition, and the two attorneys for the defendant and Schietinger left Pinsky's office. Later that day, Salazar-Austin sent Pinsky an e-mail that attempted to resolve the issue regarding Schietinger's presence at the plaintiffs' depositions. In the e-mail, Salazar-Austin indicated that if the plaintiffs' counsel was "willing to drop [his] insistence that [American Medical Response of Connecticut, Inc.'s] designated representative is a trespasser," the defendant was willing to conduct the remaining depositions the next day.

On August 2, 2017, pursuant to Practice Book §§ 13-14[3] and 17-31,[4] the defendant filed a motion for nonsuit or default and entry of judgment of dismissal or other appropriate sanctions against all of the plaintiffs except for MacCalla. In the memorandum of law accompanying that motion, the defendant sought dismissal of the plaintiffs' claims or other appropriate sanctions, given their "complete disregard for their discovery obligations . . . ." The plaintiffs filed an objection to the defendant's motion, and, on August 11, 2017, the court heard oral argument. Following argument, the court took a brief recess before issuing its decision:

"The Court: These type of cases are very complicated and require thorough preparation, and they are not—they're not rearend accident cases.

"The lack of early discovery requests by the defendant does not excuse the failure to prepare one's case. The shenanigans surrounding the depositions are unprofessional and unacceptable.

"The [2012] case is four and [one-half] years old and it is nowhere ready for trial. I'm dismissing the case."

At that time, the court did not dismiss the consolidated 2016 case.[5] Following its decision from the bench, the court granted the defendant's motion for nonsuit and entered a judgment of dismissal against the plaintiffs, including MacCalla, as to the 2012 case.[6] The plaintiffs appeal from this decision.

We begin by setting forth our standard of review for a trial court's imposition of sanctions pursuant to Practice Book § 13-14. "In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." (Internal quotation marks omitted.) *Krahel* v. *Czoch*, 186 Conn. App. 22, 32, 198 A.3d 103, cert. denied, 330 Conn. 958, A.3d (2018).

For the ease of discussion, we begin by addressing the plaintiffs' second claim on appeal, namely, the contention that the court abused its discretion in dismissing MacCalla's claim as a sanction for Pinsky's actions and for failing to comply with the court's June 5, 2017 order.[7] As noted previously in this opinion, the defendant's motion for nonsuit was not directed to MacCalla, and the defendant at oral argument before this court and the trial court[8] acknowledged that MacCalla had fully complied with his discovery obligations and the June 5, 2017 order. Accordingly, we agree with the plaintiffs that the court's sua sponte dismissal of MacCalla's claim was in error given that the defendant never alleged MacCalla was noncompliant with the discovery order and never sought sanctions against this particular plaintiff.[9]

Having resolved that the dismissal of MacCalla's claim was an abuse of discretion, we now turn to the plaintiffs' argument that the court's dismissal of the entire 2012 case was a disproportionate sanction given the noncompliance at issue. The plaintiffs contend that the court abused its discretion in dismissing the entire 2012 case because their conduct during discovery was not intended to be dilatory or obstructive and that the incident on June 17, 2017, was predicated on Pinsky's good faith, but mistaken, belief that prior notice of Schietinger's attendance was required. Additionally, the plaintiffs claim that the court erred inasmuch as the dismissal of the 2012 case constituted a sanction for conduct solely limited to counsel. In response, the defendant argues that the plaintiffs repeatedly failed to comply with discovery deadlines and, with respect to the plaintiffs' depositions, Pinsky accused Schietinger

of being a trespasser after both sides had reviewed the Practice Book and determined that prior notice of a party's attendance was not required in this instance. Thus, according to the defendant, Pinsky's subsequent actions during Yurksaitis' deposition represented a deliberate indifference to the rules of practice and a wilful violation of the court's discovery order.

We have examined the record and conclude that the court did not abuse its discretion in dismissing the claims of the other five plaintiffs in the 2012 case. We agree with the court's finding that Pinsky's actions were "unprofessional and unacceptable." Labeling a party's corporate representative attending a deposition a trespasser evinces a disregard for the provisions of the Practice Book and the authority of the court. This court has held previously that "where a party [has] show[n] a deliberate, contumacious or unwarranted disregard for the court's authority," dismissal of the entire case may constitute an appropriate sanction. *Emerick* v. *Glastonbury*, 177 Conn. App. 701, 736, 173 A.3d 28 (2017), cert. denied, 327 Conn. 994, 175 A.3d 1245 (2018). Moreover, we do not accept the plaintiffs' explanation in their appellate brief that Pinsky made this accusation "out of concern for the fairness of the depositions in light of intimidation felt and expressed by two of the plaintiffs," as both deponents, MacCalla and Yurksaitis, stated that they did not feel physically threatened by Schietinger and indicated a willingness to proceed with their depositions despite his presence. In any event, the appropriate action, had counsel believed that the depositions were "being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party," would have been to file a motion with the court to cease or limit the scope and manner of the depositions. Practice Book § 13-30 (c); see Practice Book § 13-5.

Further, we conclude that it was not an abuse of discretion for the court to dismiss the claims of the other five plaintiffs on the basis of their counsel's actions. This case is distinguishable from *Herrick* v. *Monkey Farm Cafe, LLC*, 163 Conn. App. 45, 53, 134 A.3d 643 (2016), in which we reversed the trial court's decision to dismiss a litigant's case as a sanction for his counsel's conduct. In *Herrick*, the plaintiff's counsel was sanctioned $500 for failing to revise the operative complaint in accordance with an earlier court ruling. Id., 47–48. When counsel failed to pay the fine in a timely fashion, the trial court dismissed the action. Id., 48. On appeal, this court ruled that the entry of dismissal was a disproportionate sanction in light of the fact "that the dilatory behavior found offensive by the court involved only counsel and not the plaintiff . . . [and] the court made no finding that counsel's failures were wilful." Id., 52. Here, the defendant sought sanctions for the plaintiffs' noncompliance with a discovery order, which was not directed solely to counsel, and the

court's dismissal was predicated, at least in part, on the plaintiffs' failure to prepare their case properly. Although in some circumstances it may be unduly harsh to impute counsel's transgressions to his client, "our adversarial system [also] requires that the client be responsible for acts of the attorney-agent whom [he] has freely chosen . . . ." *Thode* v. *Thode*, 190 Conn. 694, 698, 462 A.2d 4 (1983); see *Sousa* v. *Sousa*, 173 Conn. App. 755, 773 n. 6, 164 A.3d 702 ("[a]n attorney is the client's agent and his knowledge is imputed to the client" [internal quotation marks omitted]), cert. denied, 327 Conn. 906, 170 A.3d 2 (2017). Unlike in *Herrick*, the court in this case found that the conduct of plaintiffs' counsel demonstrated a deliberate and contumacious disregard for its authority insofar as Pinsky's actions were determined to be "unprofessional and unacceptable," and that the noncompliance was not limited to counsel, given that the case was "nowhere ready for trial" despite the plaintiffs being afforded more than four years to prepare. Cf. *Herrick* v. *Monkey Farm Cafe, LLC*, supra, 52–53; see also *Faile* v. *Stratford*, 177 Conn. App. 183, 210, 172 A.3d 206 (2017) (court abused its discretion in dismissing action without finding "wilful disregard of its orders").

The judgment is reversed only as to the dismissal of MacCalla's claim and the case is remanded for further proceedings thereon; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The defendant asserts that its counsel sent several e-mails to Pinsky, asking when the discovery responses would be provided, but it received no response to any of those e-mails.

[2] See Practice Book § 13-30 (g) (3).

[3] Practice Book § 13-14 provides in relevant part: "(a) If any party . . . has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

* * *

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal."

[4] Practice Book § 17-31 provides in relevant part: "Where either party is in default by reason of failure to comply with Sections 10-8, 10-35, 13-6 through 13-8, 13-9 through 13-11, the adverse party may file a written motion for a nonsuit or default or, where applicable, an order pursuant to Section 13-14."

[5] The 2016 case was dismissed on November 20, 2017, for lack of subject matter jurisdiction.

[6] Upon review of the trial court file, it was unclear as to whether the court's entry of judgment of dismissal was based on its granting of the defendant's motion for nonsuit. Following a sua sponte request from this court, the trial court issued a clarification providing: "On August 11, 2017, this court granted the defendant's motion for nonsuit or default and entry of judgment of dismissal or other appropriate sanctions (#144). In doing so, the court entered a judgment of dismissal in this action."

[7] To the extent the plaintiffs contend that the court never adopted the parties' agreement to conduct the depositions on July 17 and 18 as a *discovery* order, this argument is inadequately briefed and, therefore, does not merit our review. *Ravalese* v. *Lertora*, 186 Conn. App. 722, 724 n.1,     A. 3d     (2018) ("[c]laims are inadequately briefed when they are merely

mentioned and not briefed beyond a bare assertion" [internal quotation marks omitted]).

[8] During argument on its motion for nonsuit, the defendant conceded that it was able to take MacCalla's deposition and, therefore, was not seeking sanctions against him.

[9] The defendant contends that the court's decision constituted harmless error because MacCalla's deposition testimony reveals that his promissory estoppel claim has no evidentiary basis. We decline to address this argument, however, as it requires us to reach the merits of the underlying case in the absence of a motion for summary judgment or trial. See *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 26 n.3, 191 A.3d 212 (2018) ("A court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof." [Internal quotation marks omitted.]).

---